IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

DELCO, INC.                                                                          PLAINTIFF

v.                                                    CIVIL ACTION NO. 2:11-CV-90-KS-MTP

CORPORATE MANAGEMENT,
INC., et al.                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants in part and denies in part**
Defendants' Motion to Dismiss [104]. The Court dismisses this case for lack of subject
matter jurisdiction, but the Court finds that Plaintiff is not required to exhaust the
administrative remedies provided by 42 U.S.C. § 405(g) before asserting its claims in
a court of proper jurisdiction. Accordingly, Plaintiff's remaining claims are **dismissed
without prejudice**.

## I. BACKGROUND

This case involves the change in ownership of a nursing care facility, the
transfer of the Medicare provider number, and a subsequent dispute over the payments
and liabilities for services provided under the Medicare provider agreement prior to the
transfer.

Plaintiff leased a nursing home facility in Leakesville, Mississippi, from Melody
Manor Convalescent Center and operated a nursing home at the location. Plaintiff's
lease expired on December 31, 2009, and Melody Manor elected to not renew the lease.
Another company – either Defendant Leakesville Rehabilitation and Nursing Center,

Inc. or Defendant Corporate Management, Inc. – currently operates a nursing home at the same location. All three companies – Melody Manor, Leakesville Rehabilitation and Nursing, and Corporate Management – are owned by Defendant Harold Ted Cain. On or about January 1, 2010, one or more of the Defendants began operating the Leakesville nursing care facility.

Plaintiff alleges that Defendants unilaterally and surreptitiously caused its Medicare provider number to be transferred to Defendant Corporate Management. Plaintiff has submitted claims to Medicare for services it provided prior to January 1, 2010 – when it operated the Leakesville facility. However, Plaintiff has not received the payments on those claims. Rather, the payments have gone to Corporate Management, the new owner of the Medicare provider number.[1] Plaintiffs brought a variety of claims against the Defendants named above, plus the Secretary of the United States Department of Health and Human Services, the Centers for Medicare and Medicaid Services ("CMS"), and the Mississippi Division of Medicaid.

On October 18, 2011, the Court [38] granted a motion to dismiss filed by the federal Defendants. The Court held that the Medicare Act limited the jurisdiction of federal courts to review claims brought under the Act by requiring that virtually all such cases be brought through the agency's administrative process. *See Nat'l Athletic Trainers Ass'n v. United States HHS*, 455 F.3d 500, 503 (5th Cir. 2006). Accordingly, this Court's jurisdiction in cases arising under the Medicare Act is limited to those in

---

[1]The disputed funds are currently held in the registry of the Court.

which the claimant has exhausted the administrative review process, or in which the administrative review process provides no review at all. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19, 120 S. Ct. 1084, 146 L. Ed. 1 (2000). As Plaintiff had not availed itself of the administrative process and merely sought payment of Medicare claims allegedly paid to another provider, the Court found that it did not have jurisdiction over Plaintiff's claims against the federal Defendants.

On May 15, 2012, the Court entered an agreed order [103] dismissing Plaintiff's claims as to the Mississippi Division of Medicaid without prejudice. The remaining Defendants filed a Motion to Dismiss [104], arguing that the Medicare Act deprives the Court of jurisdiction over Plaintiff's claims against them for the same reasons stated in the Court's previous opinion.

## II. DISCUSSION

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The party asserting jurisdiction has the burden of proving it. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). When addressing a 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (punctuation omitted).

There are two issues the Court must address. First, the Court must determine whether Plaintiff is required to exhaust its administrative remedies before seeking relief in a federal court. Second, the Court must determine whether Plaintiff's claims

3

arise under federal law.

### A.    *Exhaustion of Administrative Remedies*

Section 405(h) of the Social Security Act provides:

> The findings and decision of the Commission of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 . . . of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). The Medicare Act incorporates this section, providing that any reference to the Commissioner of Social Security or the Social Security Administration should be considered a reference to the Secretary or Department of Health and Human Services. 42 U.S.C. § 1395ii; *Wolcott*, 635 F.3d at 764. Therefore, 42 U.S.C. § 405(g) provides the "sole avenue for judicial review of all claims arising under the Medicare Act," *Rencare, Ltd. v. Humana Health Plan of Texas*, 395 F.3d 555, 557 (5th Cir. 2004), and one must satisfy the following requirements before seeking judicial review:

> (1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court, in general that of the plaintiff's residence or principal place of business.

*Wolcott*, 635 F.3d at 764 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 763-64, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975)).

Defendants argue that Plaintiff's claims arise under the Medicare Act, and that Plaintiff must exhaust its administrative remedies before seeking judicial review.

4

*Rencare, Ltd. v. Humana Health Plan of Texas*, 395 F.3d 555 (5th Cir. 2004), is instructive on this issue. In that case, Humana – a Texas HMO – contracted with Rencare to provide medical services to its enrollees. *Id.* at 557. Humana received a fixed amount of Medicare benefits each month for each enrolled Medicare patient, regardless of the value of the service each patient received. *Id.* at 556-57. Humana and Rencare disagreed over the amount of reimbursement for certain medical services provided by Rencare to Humana enrollees, and Rencare sued Humana in Texas state court, asserting various state tort and contract claims. *Id.* at 557.

Humana removed the case to federal district court, arguing that Rencare's claims were preempted by the Medicare Act. *Id.* The district court agreed, and it eventually dismissed the case, finding that Rencare had failed to exhaust its administrative remedies. *Id.* On appeal, the Fifth Circuit reversed, finding that Rencare's state tort and contract claims against Humana did not arise under the Medicare Act, and, therefore, there were no administrative remedies for it to exhaust. *Id.* at 560. This case presents the same situation.

"A claim arises under the Medicare Act if both the standing and the substantive basis for the presentation of the claim is the Medicare Act, or if the claim is inextricably intertwined with a claim for Medicare benefits." *Id.* at 557 (citations and punctuation omitted). Plaintiff's claims are based on state law.[2] Therefore, the standing

---

[2]Plaintiff also claims that Defendants violated two federal criminal statutes, but Plaintiff clarified in briefing that it did not intend to assert a private right of action for these criminal statutes. Rather, Plaintiff argues that Defendants' alleged violation of these federal laws supports Plaintiff's state law tort claims.

and substantive basis for its claims is not the Medicare Act. *Id.* at 557. Accordingly, Plaintiff must exhaust its administrative remedies only if the claims are "inextricably intertwined with a claim for Medicare benefits." *Id.* at 558.

One factor that the Fifth Circuit has considered in determining this issue is whether the government or any Medicare enrollees have a financial interest in the outcome of the case. *Id.* In a letter dated October 25, 2010 [8-3], a representative of CMS communicated to Plaintiff's counsel that when "there is a change of ownership followed by an automatic assignment of the provider agreement, there is only one provider of services which has had two different corporate owners." Accordingly, CMS stated that "it is up to the two entities to work out the details of reconciling the dollars paid by Medicare. CMS and the [fiscal intermediary] do not get involved in the details of the reconciliation between the two parties."

Medicare regulations provide that the "lease of all or part of a provider facility constitutes change of ownership of the leased portion." 42 C.F.R. § 489.18(a)(4). "When there is a change of ownership . . . , the existing provider agreement will automatically be assigned to the new owner." 42 C.F.R. § 489.18(c). "An assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued . . . ." 42 U.S.C. § 489.18(d). Among those terms and conditions is the following statutory provision:

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate . . . , the amounts so determined, with necessary adjustments on account of previously made

overpayments or underpayments . . . .

42 U.S.C. § 1395g(a).

The "cumulative effect" of these provisions is that Defendants' "lease of the nursing home facility and assumption of the Medicare provider agreement made [Defendants] subject to the same statutory and regulatory conditions as [Plaintiff] had been. These conditions include provisions for adjustments for over- and underpayments." *Sunrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc.*, 431 F.3d 685, 688 (9th Cir. 2005). Therefore, the "Medicare Program Integrity Manual advises the former and new owners to reach an agreement related to payments received during the CHOW[3] period: 'It is ultimately the responsibility of the old and new owners to work out any payment arrangements between them while the CHOW is being processed by the intermediary and the [CMS Regional Office].'" *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 7 (D.D.C. 2008) (quoting Medicare Program Integrity Manual, Ch. 10, § 11.1.B) (alteration original).

Therefore, as in *Rencare*, neither the government nor any Medicare enrollee has a financial interest in this dispute. *Rencare*, 395 F.3d at 559. This is simply a Mississippi tort case, albeit one that requires a cursory understanding of Medicare payment procedures and regulations. Accordingly, Plaintiff's claims are not inextricably intertwined with a claim for Medicare benefits, and Plaintiff is not

---

[3]"CHOW" refers to a Change of Ownership.

required to exhaust any administrative procedures before seeking judicial relief. *Id.*[4]

## B.   *"Arising Under" Federal Law*

Having found that Plaintiff was not required to exhaust any administrative remedies before pursuing her claims against the private Defendants, the Court must now determine whether it has jurisdiction over this case. Plaintiff asserts that this Court has federal question jurisdiction.

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to the well-pleaded complaint rule, "for a federal court to have 'arising under' jurisdiction, the plaintiff's federal law claims must appear on the face of the complaint." *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012). "A federal question exists only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008).

A complaint stating a state-law cause of action may create federal question

---

[4]In *Rencare*, Humana received payments under Medicare Part C's "Medicare + Choice" ("M+C") plan, which entails a different payment and administrative review process than Medicare Parts A and B. *See Id.* at 558-60. Rencare's claims were specifically excluded from Part C's M+C administrative appeals process. *Id.* at 559. The latter half of the Fifth Circuit's analysis focused on that aspect of the case. *Id.* at 559-60. However, this distinction is not sufficient to render the case inapplicable here. The first half of the opinion – discussed above – provides sufficient grounds to support the Court's decision that Plaintiff's claims do not arise under the Medicare Act and are not inextricably intertwined with a claim for Medicare benefits.

jurisdiction if "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh*, 538 F.3d at 338. The "mere need to apply federal law in a state-law claim" is not sufficient to create federal question jurisdiction. *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 280 (5th Cir. 2010). Rather, there must be a "substantial" federal right at issue, "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* "Congress's failure to provide a private cause of action for violation of a federal statute" suggests that the right at stake is not substantial enough to create federal question jurisdiction, but it is not determinative. *Id.* at 280-81.

In Count III of the First Amended Complaint, Plaintiff alleged that Defendants "committed statutory violations (including, at a minimum, violation of 18 U.S.C. § 669 and 18 U.S.C. § 1347) by wrongfully representing to CMS that they are entitled (under the provider number and substituted NPI) to receive payment for services from a federal health care benefit program and by wrongfully receiving and converting same when Plaintiff actually provided the services . . . ." Plaintiff clarified in briefing that it did not intend to bring a private action for violation of these criminal statutes. Rather, Plaintiff argues that Defendants' violation of these statutes is supportive of its state law tort claims in Counts IV and V – conversion and tortious interference with contract. Even if Plaintiff intended to assert a private cause of action for the violation of these criminal statutes, the statutes in question do not implicitly or explicitly

9

provide a private right of action. *See Cort v. Ash*, 422 U.S. 66, 79, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975); *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987); *Fierro v. Robinson*, 405 F. App'x 925, 926 (5th Cir. 2010).

In the Court's opinion, this case may present a "contested federal issue," but it does not present a "substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Singh*, 538 F.3d at 338. This is a private dispute between two medical service providers. As noted above, CMS represented to Plaintiff that it had no interest in this litigation, and both the Medicare regulations and the Medicare Program Integrity Manual explicitly contemplate that providers will reconcile matters like this one outside the CHOW process.

The disposition of this case will certainly require a cursory understanding of Medicare regulations and procedures, and the parties dispute certain points of federal law. At its heart, though, this is truly a tort case. At best, Defendants' alleged violations of federal law constitute elements of the tort claims at issue, and that is insufficient to establish federal question jurisdiction. *See id.* at 338-39 (where resolving state-law malpractice claim required resolving a question of federal trademark law, there was no federal question); *Budget Prepay, Inc.*, 605 F.3d at 279-80 (where contract incorporated federal statutory provisions, breach of contract case did not raise a federal question).

### III. CONCLUSION

For the reasons stated above the Court **grants in part and denies in part** Defendants' Motion to Dismiss [104] for lack of jurisdiction. Plaintiff's claims against

10

the remaining Defendants do not arise under the Medicare Act, and they are not inextricably intertwined with a claim for Medicare benefits. Therefore, Plaintiff has no obligation to exhaust any administrative remedies prior to bringing suit. However, Plaintiff's claims do not arise under federal law, and the disputed federal issues are, at best, elements of state-law tort claims. Accordingly, the Court must dismiss this case without prejudice for lack of subject matter jurisdiction. The Court will enter a separate final order in accordance with Rule 58, and an order for the release of Defendants' funds.

SO ORDERED AND ADJUDGED this 2nd day of August, 2012.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE